UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MICHAEL T. HAYES,<br><br>        Plaintiff,<br><br>    v.<br><br>CORRECTIONS CORPORATION OF AMERICA (CCA), a Tennessee Corporation; JOHN FERGUSON, CEO, CCA; PHILLIP VALDEZ, Warden Idaho Correctional Center (ICC); DAN PRADO, Assistant Warden, ICC; BRENT ARCHIBALD, ICC Investigations Officer; BRIAN DOSER, Unit manager, ICC; JUSTIN ACOSTA, Case Manager, ICC; BRANDON DELANEY, SMU Case Manager, ICC; JOHN/JANE DOES, Members SMUPlacement Committee, ICC; STEVE GARRET, ICC Medical Doctor; SUSAN BAJOVICH, ICC Medical Administrator; JANET STANGER, LPN, ICC Medical; sued in their indvidual and official capacities; and their successors in office,<br><br>        Defendants. | Case No.: CV 09-122-BLW<br><br>**ORDER RE DISCOVERY MOTIONS**<br><br>**(Docket Nos. 21, 30, 35)** |

      Currently pending before the Court are Plaintiffs' Motion to Compel (Dkt. 21),

Plaintiff's Amended Motion to Compel (Dkt. 30), and Plaintiff's Motion for Sanctions

**ORDER- 1**

(Dkt. 35).[1]  Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented.  Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court Dist. Idaho Loc. Civ. R. 7.1.

## MOTIONS TO COMPEL

In the first Motion to Compel, Plaintiff seeks discovery responses from Brent Archibald ("Archibald").  Plaintiff was not allowed to proceed with the claims against Archibald, as set forth in the Court's Initial Review Order (Dkt. 3), but was then re-named in Plaintiff's First Amended Complaint (Dkt. 7).  In the Amended Motion to Compel, Plaintiff again seeks discovery responses from Archibald and also argues that the discovery responses from Defendant Phillip Valdez ("Valdez") and Brandon Delaney ("Delaney") are incomplete.  As explained more fully below, the Court finds that Archibald is not a party to the instant lawsuit; therefore, he was under no obligation to respond to the discovery requests directed toward him as a party.  However, Plaintiff's Amended Motion to Compel is granted to the extent that Defendants must either produce the documents the Court has identified as relevant herein or file a motion for protective order in the next thirty days indicating why the documents should not be produced.

---

[1] There are seven other pending motions before the Court.  In order to address these motions in a timely and efficient manner, the Court will address these motions in the order in which they were filed and, where possible, in logical sets.

**ORDER- 2**

A. **All Discovery Requests Directed to Archibald as a Party are Invalid; Archibald is Not a Party to the Instant Lawsuit.**

Plaintiff seeks discovery from Archibald as a party under Federal Rules of Civil Procedure 26, 34, and 36. However, these rules refer to a party's obligation to respond to discovery; they do not apply to non-parties.

The Initial Review Order did not authorize Plaintiff to proceed with the claims against Archibald. Dkt. 3. Nevertheless, Plaintiff has attempted to resurrect these claims by filing an Amended Complaint asserting claims against Archibald and by challenging the United States Magistrate Judge's authority to effectively dismiss these claims.

The undersigned United States District Judge has conducted an independent review of Plaintiff's claims against Archibald. As explained further below, this review confirms the findings in the Initial Review Order: Plaintiff's allegations against Archibald fail to state a cognizable, independent *constitutional* claim.

1. **Allegations Against Archibald**

The allegations against Archibald in the initial Complaint and the Amended Complaint are substantially similar. Plaintiff alleges that he was beaten and his personal property was stolen on April 14, 2007. Plaintiff was then placed in the Segregation Management Unit ("SMU"), where he allegedly spoke with Archibald, an investigative officer, and told him the names of his assailants, asked that Archibald retrieve his stolen property, and informed Archibald that he believed the assault was recorded on the day room video cameras. *Civil Rights Complaint*, ¶ 11 (Dkt. 1), *First Amended Civil Rights Complaint*, ¶ 38 (Dkt. 7). Based on these allegations, Plaintiff asserts that Archibald

**ORDER- 3**

violated his constitutional rights, because he took no action to punish Plaintiff's assailants, despite Plaintiff's request to charge them with robbery and aggravated assault. *First Amended Civil Rights Complaint*, ¶¶ 38, 52 (Dkt. 7).

   2. **Initial Review Order**

In the Initial Review Order, the Court did not allow Plaintiff to proceed on the Eighth Amendment claims against Archibald primarily because the allegations against Archibald relate to actions (or inaction) after the April 14, 2007 beating and theft. Moreover, the Court reasoned that there is no constitutional right to have a prison assault investigated or to have another person punished or criminally prosecuted. *Initial Review Order*, p. 6 (Dkt. 3). The Initial Review Order further states, "[b]ecause the complaint is devoid of any factual allegations showing that Defendant Archibald participated in any decision to deny Plaintiff protective housing prior to the April 14, 2007 incident or otherwise acted in a manner that caused Plaintiff harm or damage, Plaintiff has failed to state a claim upon which he can proceed against Defendant Archibald." *Id*.

   3. **Independent Review**

The reasoning in the Initial Review Order is sound; Plaintiff allegations against Archibald do not state an Eighth Amendment claim.

To state an Eighth Amendment "prison conditions" claim based on failure to prevent harm, the inmate must allege facts showing that he was or is incarcerated under conditions posing a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825,

834 (1994). When a prison official is deliberately indifferent to a substantial risk of serious harm, his conduct violates the Eighth Amendment. *Id.* at 828.

Plaintiff's claim against Archibald fails for three reasons. First, there is no constitutional right to have another person punished or criminally prosecuted. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another"); *Johnson v. Craft*, 673 F.Supp. 191, 193 (D. Miss. 1987) ("The decision to prosecute a particular crime is within the authority of the state, and there appears to be no federal constitutional right to have criminal wrongdoers brought to justice.").

Second, Plaintiff's claim against Archibald fails because the claim is premised upon a failure to act *after* the alleged harm occurred. The allegations fail to draw a causal connection between Archibald's inaction and the harm alleged.

That is not to say that a *routine* failure to investigate and charge assaults or other crimes against inmates does not state a constitutional claim. To be clear, evidence demonstrating that prison officials routinely fail to refer assaults to local prosecutors can support a deliberate indifference claim. *See Vosburg v. Solem*, 845 F.2d 763, 766 (8th Cir. 1988) (evidence that prison investigated approximately 500 crimes between 1984 and 1985 and only referred two or three to prosecution supported finding that prison acted with reckless disregard to prisoner's right to protection from violent attacks); *see also LaMarca v. Turner*, 662 F.Supp. 647 (S.D. 1987). The reason for this rule is that if the prison does not investigate and discipline prisoners for the violence they perpetrate on

**ORDER- 5**

one another, the prisoners may attack one another with impunity, and the prison can be held liable for being deliberately indifferent to the inmates' safety.

However, the allegations against Archibald do not rise to a level necessary to demonstrate that Archibald's alleged failure to report the crime constituted deliberate indifference to Plaintiff's safety. This single inaction does not rise to the level necessary to establish a failure to protect or to confer liability on Archibald individually.

The third reason Plaintiff's claim against Archibald fails is that, even if the prison were constitutionally obligated to report the incident to law enforcement, the record reflects that Archibald, in fact, filed a report with the Ada County Sheriff. The confusion over this appears to stem from Archibald's May 16, 2007 response to Plaintiff's hand-written concern form regarding the theft of his personal items. Dkt. 21-1, p. 2. In a hand-written response, Archibald indicates that he did not inform the Ada County Sheriff of the incident but he also states that he thought Plaintiff was going to. *Id.* ("You said you were filing your complaint downtown!").

Regardless, sometime thereafter, Archibald reported the incident to the Ada County Sheriff as reflected in a an Ada County Sheriff's Office "General Report" form filed with the Court.[2] This report is not dated, but the Court presumes that the report was filed sometime after Archibald's May 16, 2007 response and states that Archibald

---

[2] In response to Plaintiff's Motion to Compel, Defendants produced a number of documents for the Court's *in camera* review. *See* Dkts. 25, 29, 33. In the first production is the Ada County Sheriff's Office General Report.

**ORDER- 6**

reported the incident and stated that "[t]he assault was captured on video tape but not the robbery." Dkt. 25-2.

In short, Plaintiff's claims against Archibald were dismissed properly at the initial review stage and the Amended Complaint does not contain additional allegations to address the deficiencies outlined in the Court's Initial Review Order. Accordingly, Archibald is not a party to the instant lawsuit and, therefore, is not required to respond to the discovery Plaintiff has directed to him.

**B.      Amended Motion to Compel and Defendants' Sealed Discovery Responses**

In the Amended Motion to Compel, Plaintiff again seeks discovery directed to Archibald as a party, but also seeks more complete discovery responses from Defendants Valdez and Delaney. *Brief in Support of Motion to Compel Discovery* (Dkt. 30-1). Plaintiff characterizes the documents he seeks as "relevant to past mistreatment of Inmates by other Inmates and ICC/CCA Guards of specific allegations or sanctions placed on Inmates or Guards [sic]." *Id.* at p. 3. Plaintiff states that he "has information that repeated assaults on inmates and ICC Staff's refusal to take action against inmate perpetrators has been an on going problem for years here at the ICC prison." *Id.* at p. 5.

      **1.      Scope of Discovery in the Instant Case**

The scope of discovery is defined by the parties' claims and defenses. "Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . ." Fed. R. Civ. P. 26(b). For discovery purposes, relevancy is not related to

**ORDER- 7**

admissibility: "relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*

The instant case involves a single event: the alleged assault and theft that occurred on April 14, 2007. This lawsuit is not a class action. Nonetheless, the history of previous assaults may be relevant to the instant lawsuit to the extent Defendants were on notice of possible threats to Plaintiff's safety. Accordingly, the Court directs the prison to supply Plaintiff with responses to the discovery requests concerning previous assaults on other inmates between April 14, 2006 and April 14, 2007.

### 2.     **Documents Produced for Court's *In Camera* Review**

In responding to Plaintiff's Motion to Compel, Defendants produced three sets of documents for the Court's *in camera* review. *See* ICC Defendants' Response to Plaintiff's Motion to Compel (Dkts. 26, 28, 32). Relying upon Idaho Code § 9-340B, Defendants state "[t]hese documents were withheld for the reason that security interests of the facility and inmates interviewed require special protection in this matter." *Id.* Defendants further state "[t]he Court may deem portions of these documents to be relevant and discloseable, with appropriate redactions. However, given the context and content of these documents, it is unlikely such a simple redaction may be possible at this time." *Id.*

In the Scheduling Order, the Court provided a mechanism for Defendants to follow when withholding otherwise discoverable materials. *Scheduling Order*, ¶ 2 (Dkt. 14). However, the Court directed Defendants to provide a security/ privilege log

**ORDER- 8**

sufficiently describing any undisclosed relevant documets which are alleged to be subject to nondisclosure. *Id.*

The Court does not see a security/ privilege log in the record and, therefore, does not have information concerning the alleged security risks specific to each document filed with the Court for *in camera* review. Nonetheless, the Court reviewed the documents and finds the following material relevant to the instant lawsuit:

> (1) ICC Hayes 5-38 , 147, 1088-1091092 (information specific to the April 14, 2007 assault); and
>
> (2) ICC Hayes 359-378 (ICC Incident Reporting Policy).

If Defendants contend that the production of these documents would present a security risk or should otherwise be withheld due to concerns that redaction cannot address, then Defendants must file a motion for protective order and provide the Court with a reasoned explanation for why the disclosure of these documents poses a risk. *See* Fed. R. Civ. P. 26(c). Absent such a protective order, these relevant materials must be produced. *See* Fed. R. Civ. P. 26(a).[3]

---

[3] The Court does not require nor desire a protective order in every instance when prison officials submit documents for the Court's *in camera* review. However, in the instant lawsuit, such an order may be necessary, because the Court conducted its *in camera* review of the documents filed without the benefit of a privilege/ security log. Therefore, to protect against the disclosure of documents that may threaten the security of the prison, prisoners, or prison officials, the Court will allow Defendants the opportunity to submit a protective order explaining why the disclosure of these documents would not be appropriate.

**ORDER- 9**

C.   **Motion for Sanctions**

Plaintiff moves for sanctions under Federal Rule of Civil Procedure 37(b)(2). Dkt. 35. He argues that Defendants refused to comply with the Scheduling Order and complete discovery by September 30, 2010. Hayes characterizes Defendants' responses to his discovery requests as "evasive" and "incomplete." *Id.* at p. 2. He also argues that Defendants were responsible for preserving the day room video that the Ada County Sheriff's Office allegedly destroyed. *Id.* at p. 4.

Because the Initial Review Order made clear that Plaintiff could not proceed with the claims against Archibald, Defendants were under no obligation to respond to Plaintiff's discovery requests directed to Archibald. Moreover, while the decision to send the only copy of the day room video tape was, in hindsight, ill-advised; the Court does not find that the error warrants sanctions.

Sanctions are available under Federal Rule of Civil Procedure 37 provides for sanctions where a party fails to comply with a discovery order or fails to disclose or supplement information as required under the discovery rules. Fed. R. Civ. P. 37(b)(2), (c)(1). In addition, the Court may award discovery sanctions if a party intentionally destroys evidence with knowledge that those records may be relevant to litigation. *State of Idaho Potato Com'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 720 (9th Cir. 2005).

In the instant case, Defendants have failed to disclose that which they no longer possess: the day room video tape. The evidence suggests that Archibald turned the day

**ORDER- 10**

room video over to the Ada County Sheriff's Office for investigation. When charges were not filed, the evidence was destroyed -- not by Defendants -- but by the Ada County Sheriff's Office. Consequently, the day room video tape is no longer in Defendants' possession, and the Court finds that Defendants cannot be held responsible for intentionally destroying the evidence. Accordingly, discovery sanctions against Defendants are not warranted.

## CONCLUSION

Because Archibald is not a party to the lawsuit, Defendants were justified in not responding to discovery requests directed toward him. Nonetheless, producing the General Report filed with the Ada County Sheriff's Office may help Plaintiff understand that Archibald, in fact, filed a report with the Ada County Sheriff concerning the April 14, 2007 assault. In addition, Defendants must produce documents regarding assaults on inmates for the year before Plaintiff's alleged assault as this information may be relevant to Plaintiff's Eighth Amendment failure to protect claim.

## ORDER

In accordance with the foregoing, IT IS HEREBY ORDERED:

1. Plaintiffs' Motion to Compel (Dkt. 21) is denied.
2. Plaintiff's Amended Motion to Compel (Dkt. 30) is granted to the limited extent that within 30 days of the date of this Order, Defendants must either: (1) produce the identified, relevant discovery or (2) file a motion for

**ORDER- 11**

protective order indicating why production is not appropriate under Fed. R.

Civ. P. 26(c). Plaintiffs motion is denied in all other respects.

3. Plaintiff's Motion for Sanctions (Dkt. 35) is denied.



DATED: **March 11, 2011**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge