UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MICHAEL T. HAYES,<br><br>                    Plaintiff,<br><br>          v.<br><br>CORRECTIONS CORPORATION OF AMERICA (CCA), a Tennessee Corporation; JOHN FERGUSON, CEO, CCA; PHILLIP VALDEZ, Warden Idaho Correctional Center (ICC); DAN PRADO, Assistant Warden, ICC; BRENT ARCHIBALD, ICC Investigations Officer; BRIAN DOSER, Unit manager, ICC; JUSTIN ACOSTA, Case Manager, ICC; BRANDON DELANEY, SMU Case Manager, ICC; JOHN/JANE DOES, Members SMU Placement Committee, ICC; STEVE GARRET, ICC Medical Doctor; SUSAN BAJOVICH, ICC Medical Administrator; JANET STANGER, LPN, ICC Medical; sued in their individual and official capacities; and their successors in office,<br><br>                    Defendants. | Case No. 1:09-cv-00122-S-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

There are several motions pending before the Court, categorized as follows:

(1)     *Discovery Motions*, consisting of the ICC Defendants'[1] Motion for a

---

[1]  The term "ICC Defendants" refer to defendants Corrections Corporation of America, John Ferguson, Phillip Valdez, Daniel Prado, Brian Doser, Justin Acosta, and Brandon Delaney.

Protective Order (Dkt. 59) and Plaintiff's motions related to the confiscation of his journal and other items,[2] *see* Dkt. 44 (Plaintiff's Motion to Return Journal and Other Items); Dkt. 53 (Plaintiff's Objections to and Motion to Strike Affidavit of Annette Mullen); Dkt. 62 (Plaintiff's Motion for a Bench Warrant);

(2)    *Motions Related to Summary Judgment*, consisting of the ICC Defendants' Motion for Summary Judgment (Dkt. 40), the ICC Defendants' Motion for Leave to File an Amended Motion for Summary Judgment (Dkt. 57), and Plaintiff's Motion in Opposition to Defendants' Motion for Summary Judgment (Dkt. 61); and

(3)    *Motions Related to the Complaint*, consisting of Plaintiff's Motion for Leave to File First Supplemental Civil Rights Action (Dkt. 54), Plaintiff's Motion for Joinder to ACLU Case (Dkt. 64), and Plaintiff's Motion for Class Certification (Dkt. 65);

The Court finds that the decisional process would not be aided by oral argument, and it will resolve these motions after consideration of the parties' written submissions. D. Idaho L. Civ. R. 7.1(d).

## BACKGROUND

Plaintiff Michael Hayes is an Idaho Department of Correction (IDOC) inmate who has been incarcerated at the Idaho Correctional Center (ICC) since 2004.  On April 14, 2007, Hayes was beaten and robbed by two other inmates.  According to prison records, these inmates went into Hayes' cell and "assaulted him with a lock in their hand as a weapon.  They told him they wanted him to pay rent and he refused.  As they assaulted him, they robbed him of his commissary, . . . ."  Dkt. 46-4, at 1.  Hayes fled his cell, but

---

[2]  Plaintiff, who is a pro se litigant, does not characterize these motions as discovery motions.  Nonetheless, as explained below, this group of motions is relevant to this action only insofar as plaintiff suggests his journal contains information potentially relevant to this action.

the assault continued, eventually ending with inmate Timothy Bushnell "knocking Hayes down to the floor and kicking him continually until he appeared to go unconscious. Inmate Hayes then got up and attempted to exit the pod by pushing the call button at the pod door.  The pod was locked down and a code blue called because of the assault."  *Id.*

Hayes had filed concern forms before the assault, asking to be transferred to a different pod because he feared for his safety.  Those requests were denied.

Following the assault, Hayes was treated for injuries and then placed in the Segregation Management Unit.  He was later transferred to a different pod where he is "largely free of these kind of assaults."  Dkt. 7 ¶ 39.

In this action, Hayes asserts that defendants failed to protect him, violating his rights under the Eighth Amendment and the Due Process Clause.  Hayes filed his original complaint in March 2009 and his first amended complaint in November 2009.  Dkt 1, 7.

## DISCOVERY MOTIONS

### 1.   ICC Defendants' Motion for a Protective Order

The discovery cutoff in this case was September 30, 2010 and the dispositive-motion cutoff was November 30, 2010.  *See* Dkt. 14, at 2; *see also* Dkt. 51 (granting minor extensions to the motion cutoff).  In early 2010 – well before the discovery cutoff, Hayes filed two motions to compel.  *See* Dkt. 21, 30.  The Court decide these motions on March 11, 2011; among other things, the Court ordered the ICC Defendants to produce additional documents on a discrete issue: those "concerning previous assaults on other inmates between April 14, 2006 and April 14, 2007."  Dkt. 51, at 8.  At the same time, the

MEMORANDUM DECISION AND ORDER - 3

Court gave these defendants an opportunity to seek a protective order related to these documents.  *Id.*

In April 2011, the ICC Defendants responded with the currently pending motion for a protective order.  They argue that a protective order is necessary because "disclosure of these documents to a currently incarcerated inmate would threaten the security of the prison, prisoners, or prison officials."  Dkt. 59, at 4.  The ICC Defendants also contend that redacting sensitive information would render the documents useless.

Hayes did not respond to this motion, and the ICC Defendants urge the Court to grant the motion on that basis alone.  *See* Dkt. 63.  The Court declines to do so for two reasons.

*First*, while the Court recognizes that pro se litigants are bound by the rules of civil procedure, this case is procedurally confusing, in part because so many motions pile up before the Court has a chance to decide them.  This pileup likely caused some confusion as to whether Hayes was required to respond to the motion for a protective order.  In particular, the Court notes that when it ordered the ICC Defendants to produce the inmate-on-inmate-assault documents, it also gave Hayes until June 30, 2010 to amend his summary judgment brief.  Dkt. 50, at 6.  In theory, Hayes would have had new documents in his hands at that point, which would have allowed him to strengthen his opposition.

The ICC Defendants did not produce the documents to Hayes, however, electing instead to file a motion for a protective order.  And on July 1, 2011 – one day after the June 30, 2011 deadline to file amended summary judgment briefing – Hayes filed his

MEMORANDUM DECISION AND ORDER - 4

"Motion in Opposition to Summary Judgment," wherein he complained that the ICC

Defendants had not produced documents to him and that summary judgment should be

denied on that basis.  Dkt. 61.

Under these circumstances, it seems apparent that Hayes was unaware of any need

to respond to the motion for a protective order.  Accordingly, the Court will not grant the

motion for a protective order simply because Hayes did not file an objection.

*Second,* even in the absence of an opposition, a motion must have merit before the

Court will grant it.  Here, while the Court understands the security concerns implicated by

producing the requested documents to Hayes, the ICC Defendants have not adequately

explained why redacting sensitive information would render the documents useless.

Further, defendants' need for security must be balanced against Hayes' right to discover

relevant evidence.

Documents relating to inmate-on-inmate assaults at the prison are potentially

relevant to Hayes' action because he contends that defendants were deliberately

indifferent to serious threats to his safety.  To demonstrate such indifference, a prisoner

must show that the official knew of and disregarded an excessive risk to inmate safety.

*Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  To prove knowledge of the risk, the

prisoner may rely on circumstantial evidence.  *Id.* at 842.  For example,

> if an Eighth Amendment plaintiff presents evidence showing that a
> substantial risk of inmate attacks was "longstanding, pervasive, well-
> documented, or expressly noted by prison officials in the past, and the
> circumstances suggest that the defendant-official being sued had been
> exposed to information concerning the risk and thus 'must have known'

about it, then such evidence could be sufficient to permit a trier of fact to
find that the defendant-official had actual knowledge of the risk."

*Id.* (quoting respondents' brief).

Under these authorities, Hayes should be permitted the chance to prove that, based

on past assaults, the risk was so obvious that defendants *must* have known that Hayes

faced a substantial risk of serious harm.  *See Dykes v. Morris*, 85 F.R.D. 373, 376-77

(N.D. Ill. 1980) (under similar facts, court ordered prison officials to submit reports of

other inmate-on-inmate assaults for an *in camera* inspection).

To balance Hayes' right to discover evidence of other inmate-on-inmate assaults

with the ICC Defendants' security concerns, the Court orders the following:

(1)      The ICC Defendants shall produce documents to Hayes related to inmate-

on-inmate assaults at the prison during the period April 14, 2006 through April 14, 2007.

Defendants may redact information from these documents that is asserted to be sensitive

or confidential (such as information containing other inmates' private medical

information) but must concurrently produce a log indicating the type of information

redacted from each document and the reason for the redaction.  Further, if inmate names

are redacted, the ICC Defendants should not simply block out that information; they must

replace each inmate's name with anonymous identifier, such as "Inmate X" each time that

inmate's name appears in a prison record.

(2)      The Court will attempt to appoint pro bono counsel for the limited purpose

of assisting Hayes with discovery in this case.  Such counsel will assist Hayes in

MEMORANDUM DECISION AND ORDER - 6

obtaining documents responsive to his outstanding document request. The Court believes counsel is necessary because Hayes has requested a potentially large pool of documents that are sensitive to prison security, and the presence of counsel will ensure that Hayes obtains responsive documents while at the same time allowing the prison to protect sensitive information and maintain security. Put differently, lawyers are skilled at sifting through large pools of documents and assessing the propriety of redactions; pro se litigants are not. The Court will issue a separate order identifying Hayes' counsel.

(3)    The ICC Defendants are further ordered to coordinate discovery efforts in this case with discovery efforts of the parties in *Kelly v. Wengler*, Case No. 1:11-cv-00185-EJL. The parameters of the coordinated discovery are explained further, below, in connection with the Court's ruling on Hayes' motion to "join" this case with *Kelly*.

## 2.    Motions Related to Hayes' Journal and Other Property

Hayes has filed two motions related to defendants' seizure and destruction of his journal and other property. In the first motion, he asks the Court to order defendants to return his journal and various other items. *See* Dkt. 44. In the second, he asks the Court to issue a bench warrant for the arrest of Annette Mullen.[3] *See* Dkt. 62. Ms. Mullen is a correctional counselor at ICC who was involved in confiscating the journal. *See Mullen*

---

[3] Plaintiff has also filed a Motion to Strike the Affidavit of Annette Mullen. *See* Dkt. 53. This motion does not contain any evidentiary objections, however. Instead, it sets forth arguments responding to defendants' opposition to Hayes' Motion to Return Journal. *See* Dkt. 53. The Court will therefore construe this motion as a reply in support of the Motion to Return Journal.

*Aff.*, Dkt. 48-1.  Hayes contends that his journal had the names of other inmates who were assaulted at ICC, and that prison staff confiscated the journal so that it could not be used as evidence against ICC.

Defendants assert that Hayes' property box was confiscated in July 2010 after prison staff received an anonymous tip that Hayes was performing legal work for other inmates, and that these inmates "paid" him by giving him items they bought from the prison commissary.  When prison staff searched Hayes' cell, they determined that various items – including the journal – were not properly in Hayes' possession and thus subject to confiscation.  *See* Dkt. 60-1 ¶¶ 4-5.  The journal was later destroyed, apparently because Hayes did not directly indicate to Mullen how the prison should dispose of his property.  *See id.* ¶ 8 (Mullen states that "none of the his paperwork ever made it to me . . . .").

Hayes vigorously disputes the above version of the facts.  He argues that the seizure was wrongful, that he properly grieved the seizure, and, moreover, that defendants have not actually destroyed his property.

As an initial matter, this Court cannot determine the constitutional implications of the seizure and destruction of Hayes' property.  Such a claim is not part of this lawsuit, and the Court is denying Hayes' motion to amend his complaint.  The Court will, however, issue rulings regarding the journal within the bounds of this action given Hayes' contention that the journal contains discoverable information.  In that regard, if the

journal does, in fact, still exist, the ICC Defendants are ordered to return it to Hayes.[4]

If the journal has been destroyed, Hayes could theoretically file a motion for evidentiary sanctions related to its destruction.  The Court will construe Hayes' Motion for a Bench Warrant for the Arrest of Annette Mullen as such a motion.

Federal trial courts have the "inherent discretionary power to make appropriate evidentiary rulings in response to destruction or spoliation of relevant evidence."  *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993).  Courts may sanction parties for destruction of evidence in three ways.  "First, a court can instruct the jury that it may draw an inference adverse to the party or witness responsible for destroying the evidence.  Second, a court can exclude witness testimony proffered by the party responsible for destroying the evidence and based on that destroyed evidence.  Finally, a court may dismiss the claim of the party destroying the evidence."  *In re Napster Copyright Litig.*, 462 F. Supp. 2d 1060, 1066 (N.D. Cal. 2006) (all internal citations omitted).

A finding of bad faith is not a prerequisite to issuing sanctions.  Courts may issue sanctions against a party who merely had notice that the destroyed evidence was potentially relevant.  *Glover*, 6 F.3d at 1329.  A party's motive or degree of fault in destroying the evidence is relevant to what sanction, if any, is imposed.  *Napster*, 462 F.

---

[4]  The Court realizes that time frame mentioned in Hayes' journal (2005 to 2010) is broader than that in the Court's discovery order (April 2006 to April 2007).  Nonetheless, the security concerns implicated by production of the prison's documents are not implicated by returning Mr. Hayes' personal journal to him.  The Court further cautions Mr. Hayes that the fact that the Court has ordered defendants to produce this journal (if it exists) does not necessarily mean that the journal contains admissible evidence.

Supp. 2d at 1067.

Under this standard, evidentiary sanctions are not warranted.  First, there is no evidence that defendants knew the journal was potentially relevant to this action.  Second, the Court has ordered defendants to produce other evidence of inmate-on-inmate assaults. *Cf. Med. Lab. Mgmt. Consultants v. ABC, Inc.*, 306 F.3d 806, 824 (9th Cir. 2002) (absence of defendant's bad faith in losing evidence and plaintiff's failure to pursue other evidence formed proper basis for district court's refusal to sanction).

## SUMMARY JUDGMENT AND RELATED MOTIONS

There are three motions related to the ICC Defendants' request for summary judgment: (1) the ICC Defendants' Motion for Summary Judgment, filed in December 2010 (Dkt. 40); (2) the ICC Defendants' Motion for Leave to File an Amended Motion for Summary Judgment, filed in April 2011(Dkt. 57); and (3) Hayes' "Motion in Opposition to Defendants' Motion for Summary Judgment," filed on July 1, 2011 (Dkt. 61).

A full recitation of the legal standard governing summary judgment motions is not necessary as the ICC Defendants' motion will be decided under Rule 56(d).  Sub-section (d) allows parties facing summary judgment to request that the Court deny the motion (or at least defer ruling on it) because of the need for further discovery.  It states:

> (d) **When Facts Are Unavailable to the Nonmoving.**  If a Nonmoving shows by affidavit or declaration that, for specified reasons, it cannot present facts essential justify its opposition, the court may:

(1)     defer considering the motion or deny it;

(2)     allow time to obtain affidavits or to take discovery; or

(3)     issue any other appropriate order.

Fed. R. Civ. P (d).  A party requesting a deferral or denial under Rule 56(d) "must identify by affidavit the specific facts that discovery would reveal, and explain why those facts would preclude summary judgment."  *Tatu v. City & County of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006).

In opposing the ICC Defendants' motion, Hayes testified by affidavit that the "CCA/ICC Defendants have not complied with plaintiff Hayes's requests for discovery pursuant to the F.R.C.P. Rules, 26, and 34."  Dkt. 46-2 ¶ 5.  In the opposition itself, Hayes argued that defendants must have known Hayes faced a substantial risk of serious harm when they placed him on K pod, where he was ultimately assaulted.  *See* Dkt. 46, at 25-26.  Hayes asserts that

> Sex offenders were being beaten and robbed in J, K, L pods for years and years.  These robbery and beatings were longstanding pervasive and well-documented.  Defendants ICC staff placed plaintiff Hayes in K-pod on J, K, L-tier knowing full well that it would only be a matter of time before plaintiff Hayes would be beaten and robbed.  ICC Defendants placed Hayes in harms way intentionally as the case evidence shows.

*Id.* (citing discovery requests in another case related to alleged assaults on other inmates at ICC); *see also* Dkt. 46-1, at 8.

Hayes believes the documents the ICC Defendants have been ordered to produce (specifically, documents related to assaults on other inmates) will substantiate these assertions.  Because Hayes timely requested these documents, and timely moved to

MEMORANDUM DECISION AND ORDER - 11

compel their production, the Court will deny the ICC Defendants' motion on the basis that discovery is not complete.  This ruling is without prejudice to the ICC Defendants' re-filing a summary judgment motion.  The ICC Defendants may re-file an amended summary judgment motion no earlier than 90 days or more than 180 days after an order appointing Hayes' counsel is entered.

This ruling moots Hayes' July 1, 2011 motion in opposition to defendants' summary judgment motion, which seeks denial of summary judgment on the grounds that discovery is incomplete.  It also moots the ICC Defendants' motion for leave to amend their summary judgment motion, as they will be permitted to re-file their motion. Defendants may assert the res judicata argument articulated in their proposed amended summary judgment motion in any future motion.

## MOTIONS RELATED TO THE COMPLAINT

**1.      Hayes' Motion to Amend**

In March 2011, some two years after he filed his original complaint, Hayes moved to amend his complaint a second time.  *See* Dkt. 54.  Hayes proposes to add four new claims to his existing complaint and twenty new defendants.  *See* Dkt. 56.  These claims are not directly related to the April 14, 2007 assault that forms the basis of Hayes' current lawsuit.  Rather, the new claims are based on the following general allegations:[5]

(1)      *April 2009 Seizure of Hayes' Legal Files.*  Hayes claims that in April 2009,

---

[5] Hayes' proposed amended complaint is lengthy; this summary does not attempt to recite all factual allegations contained therein.

certain defendants improperly seized his legal files, which prevented him from presenting critical evidence at his April 21, 2009 post-conviction hearing.  This seizure allegedly occurred in a different prison.  Dkt. 56-1, at 40.

(2)     *August 2009 DOR Hearing.*  Hayes claims that his due process rights were violated during an August 14, 2009 disciplinary hearing.  *Id.* at 28.

(3)     *General Claims that ICC Improperly Handles Grievances and Disciplinary Hearings.*  Hayes generally claims that ICC has a "longstanding, pervasive and well documented history of not complying with state and federal statutory, and constitutional laws" in handling grievances.  *Id.* at 35.  He makes similar claims regarding disciplinary hearings.  *See id.* at 28.

(4)     *July 2010 Seizure of Hayes' Journal and Related Items.*  Hayes claims that defendants violated his due process rights on July 15, 2010, when they seized his journal, "legal files, typewriter, law books, white enroled paper . . . 6 ink ribbons and 2 lift off correction tapes and 2 dictionaries for doing legal work . . . ."  Dkt. 56, at 25; *see also* Dkt. 56-1, at 30.

Hayes' motion to amend is governed by Federal Rule of Civil Procedure 15(a).  "Rule 15(a) is very liberal and leave to amend 'shall be freely given when justice so requires.'"  *See Amerisource Bergen Corp. v. Dialysis West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).  The Court has discretion in deciding whether to grant leave to amend, which it shall determine "by ascertaining the presence of any of four factors: bad faith, undue

delay, prejudice to the opposing party, and/or futility." *Serra v. Lappin*, 600 F.3d 1191, 1200 (9th Cir. 2010) (citations omitted).  Generally, this determination should be made "with all inferences in favor of granting the motion." *William O. Gilley Enters., Inc. v. Atlantic Richfield Co.*, 588 F.3d 659, 669 n.8 (9th Cir. 2009).  Nevertheless, the Ninth Circuit has recognized the district court's interest in the efficient management of its docket and the avoidance of unwarranted delays. *See World Wide Rush, LLC v. City of Los Angeles*, 606 F.3d 676, 690 (9th Cir. 2010); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992).  Further, the district court's discretion is especially broad "when the court has already given a plaintiff one or more opportunities to amend his complaint . . . ." *Mir v. Fosburg*, 646 F.2d 342, 347 (9th Cir. 1980).

The Court finds that granting leave to amend at this stage in the litigation would result in delay and undue prejudice to the opposing parties. Prejudice and delay are inherent in Hayes' proposed amended complaint because it adds a host of new defendants and claims and is asserted late into this litigation – after the discovery cutoff and after summary judgments motions were filed. *See Solomon v. N. Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1139 (9th Cir. 1998) (motion to amend "on the eve of the discovery deadline" properly denied because it would have required reopening discovery, thus delaying the proceedings).  Further, Hayes' proposed new claims are based on different operative facts and would dramatically alter the legal and factual scope of this case.  It would be unfair to force the defendants to proceed to trial on such a complaint at this point.  *See Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir. 1985) (amendment

substituting new claims based on different operative facts prejudicial because the time for discovery had expired and a motion for summary judgment was pending).

The fact that some discovery remains outstanding in this case, which prompted the Court to extend the deadline for the ICC Defendants to file an amended summary judgment motion, does not alter this conclusion.  For the most part, discovery is complete.  The only remaining discovery issue – inmate-on-inmate assaults – is discrete and unrelated to Hayes' new claims.  And the amended summary judgment motions are to be directed at Hayes' existing claims – not at any new claims.

The fundamental point is that this litigation has been pending for over two years and progress is being made.  To allow Hayes to assert new claims at this point would unnecessarily prolong this case, with little hope of ever resolving the Eighth Amendment claim at the heart of this action.

The Court finds *Lyle v. Jackson*, 49 Fed. Appx. 492, 494-95 (6th Cir. 2002) (unpublished order) instructive in this regard.  In that case, the Sixth Circuit upheld a district court's refusal to allow a pro se litigant to assert a variety of new claims in his pending § 1983 action.  The *Lyle* Court held that "[p]rejudice to the original defendants would have resulted by allowing these amendments to add new claims against new defendants, as it would have prolonged the proceedings without any prospect of ever resolving all of Lyle's complaints." *Id.* at 495.  On the other hand, there was no prejudice to Lyle as he could assert his new claims in separately filed complaints. *Id.*  The same is

true here.

The only new claim that is even tangentially related to this action is Hayes' claim that defendants improperly seized and destroyed his journal. But the Court handled those issues above, in ruling on the various journal-related motions Hayes filed in this action. *See* Dkt. 44, 53, 62. The fact that Hayes' journal may have some tangential relevance to this action does not support an amended complaint. The constitutional implications of the allegedly improper seizure involve a different set of facts and form a different alleged wrong. Hayes may seek to file a separate action on this wrong; it need not further delay this action.

For all the above reasons, Hayes' motion to amend his complaint will be denied.

## 2.   **Hayes' Motion for Joinder**

Hayes has also asked to join his action to the "ACLU case," *Kelly v. Wengler,* which is currently pending before this Court. *See* Case No. 1:11-cv-00185-EJL. Defendants correctly point out that the proper inquiry is not whether Hayes can join *Kelly*, under Federal Rule of Civil Procedure 20, but instead whether the two actions should be consolidated under Rule 42.

The critical inquiry under Rule 42 is whether the two actions have a common question of law or fact. Rule 42 provides, in relevant part:

> (a)   **Consolidation.** If actions before the court involve a common
> question of law of fact, the court may:
> (1)   join for hearing or trial any or all matters at issue in the action;
> (2)   consolidate the actions;

(3)      issue any other orders to avoid unnecessary cost or delay.

Fed. R. Civ. P. 42(a).

District courts have broad discretion under this rule to consolidate cases pending in the same district, and they may consolidate cases for limited purposes, including for discovery proceedings only.  *See Investors Research Co. v. U.S. Dist. Court for Central Dist. of Cal.*, 877 F.2d 777, 777 (9th Cir. 1989).  In deciding whether to consolidate, the Court balances the efficiency consolidation produces against any inconvenience, delay, or expense it would cause.  *Huene v. United States.*, 743 F.2d 703, 704 (9th Cir. 1984).

The starting point of the Rule 42 analysis is to compare the two actions.

In *Kelly,* the plaintiffs challenge the manner in which the Corrections Corporation of America (CCA) operates the Idaho Correctional Center (ICC).  Among other things, the *Kelly* plaintiffs challenge ICC's alleged practice of housing sex offenders in pods where they will likely be assaulted.  More specifically, plaintiffs allege that "in 2007 ICC began assigning an increasing number of STG [security threat groups] to J, K, and L Pods," *id.* ¶ 352 and that the "guards would jokingly wonder amongst themselves how long a sex offender would last before being assaulted in J, K, and L Pods." *Id. ¶* 68. *Kelly* then details representative assaults upon several sex–offender inmates, including the April 14, 2007 attack on Hayes.  *Id.* ¶¶ 165-77 (Hayes' assault); *see also id. ¶¶* 299-316, 300 (sex offender Parmer assaulted on K pod in November 2006); ¶¶ 350-60 (sex offender Sittner assaulted on K Pod in May 2007).

In this case, Hayes complains of the very assault detailed in the *Kelly* complaint. He also makes substantially identical assertions regarding ICC's knowledge that the J, K, and L Pods were known as pods where sex offenders would be assaulted by prison gangs. *See, e.g., Hayes* Dkt. 46, at 25-26.   The Court thus finds that *Kelly* and *Hayes* have issues of fact and law in common – namely whether defendants knowingly placed sex-offender inmates in housing units where they were likely to be assaulted by other inmates.

Despite the common issues between the cases, Defendants assert that the Court should deny consolidation because: (1) consolidation would delay resolution of this matter; (2) Hayes is a *pro se* plaintiff, whereas the *Kelly* plaintiffs are represented by counsel; (3) counsel for the *Kelly* plaintiffs indicated that they do not desire consolidation; (4) Hayes' case involves a single incident whereas the *Kelly* case "broadly challenges eleven ICC policies"; and (5) Defendants will be prejudiced because Hayes has asked for $21 million in damages, whereas the *Kelly* plaintiffs seek injunctive and declaratory relief.  Dkt. 66, at 3-4.  Defendants also assert that there will be no jury trial in *Kelly* but if Hayes' "jury is exposed to evidence of other, unrelated assaults it will undoubtedly be influenced in deciding not only liability in Plaintiff's case, but also his damages."  *Id.* at 5.

Of all these arguments, the one that carries the most weight is that Hayes is seeking damages and a jury trial, while the ACLU plaintiffs seek injunctive and declaratory relief only.  Further, defendants correctly note that the overall scope of *Kelly*

is broader.  But these objections weigh against a consolidation for all purposes.  The Court agrees that an all-purpose consolidation is not appropriate.

But coordinating discovery efforts in the two cases makes sense.  Defendants correctly point out that the discovery cutoff and dispositive-motion cutoff in this case have passed.  But that ignores the reality of the discovery situation with respect to a discrete category of documents – inmate-on-inmate assaults.  These document requests remain outstanding and documents responsive to this request are obviously relevant to the *Kelly* case.

The Court will thus order as follows:

(1)     Counsel in this action shall meet and confer with counsel for the parties in *Kelly* to determine how best to produce responsive documents to Hayes.  This meeting shall occur no later than 15 days after the Court appoints pro bono counsel for Hayes. Documents shall be produced to Hayes, along with any redaction log, no later than 30 days after this meeting.

(2)     The Court is not reopening discovery for all purposes in the *Hayes* matter. The point of this coordination is to assist Hayes in obtaining documents relating to inmate-on-inmate assaults during the time period April 14, 2006 through April 14, 2007.

(3)     This case and *Kelly* will continue to bear separate captions.  The Court will file an order in *Kelly* explaining the terms of this order, but Hayes will not be permitted to file any pleadings in the *Kelly* action.  His lawsuit will remain separate from *Kelly* for all

purposes other than the limited, coordinated discovery the Court orders here.

Finally, defendants point out that *Kelly* might settle, as there is a September 13, 2011 settlement conference scheduled in that matter.  If that case does settle, the Court will entertain a motion to reconsider this ruling.

**3.      Hayes' Motion for Class Certification**

Hayes asks the Court to certify this case as a class action, with the class consisting of "all present and future prisoners of . . . ICC."  Dkt. 65, at 2.

The prerequisites to maintaining a class action are: (1) the class is so numerous that joinder of all members is impracticable, (2) there are common questions of law and fact, (3) the representative party's claims or defenses are typical of the class claims or defenses, and (4) the representative party will fairly and adequately protect the class interests.  See Fed. R. Civ. P. 23(a).  The trial court has broad decision whether to certify a case as a class action.  *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 210 (9th Cir. 1975).

As a matter of law, the fourth listed factor is not met here.  Pro se prisoner plaintiffs cannot fairly and adequately protect the interests of a class. *See, e.g., C.E. Pope Equity Trust v. United States*, 818 F.2d 696, 697 (9th Cir. 1987); *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975).  Although the Court has ordered that Hayes be appointed pro bono counsel, that appointment is for discovery purposes only. Accordingly, Hayes may not go forward with his complaint as a class action, and the request for class certification will be denied.

MEMORANDUM DECISION AND ORDER - 20

**IT IS ORDERED:**

1.      The ICC Defendants' Motion for a Protective Order (Dkt. 59) is DENIED to the extent the ICC Defendants have refused to produce any documents.  Defendants are ordered to produce documents as described above.

2.      Plaintiff's Motion to Return Journal and Other Items (Dkt. 44) is GRANTED in part and DENIED in part, as explained above.  If the ICC Defendants retain possession of the journal, they are ordered to return it to Hayes.  Otherwise, the Court DENIES Hayes' other journal-related motions, including his Motion to Strike the Affidavit of Annette Mullen (Dkt. 53) and his Motion for a Bench Warrant for the Arrest of Annette Mullen (Dkt. 62).

3.      The ICC Defendants' Motion for Summary Judgment (Dkt. 40) is DENIED without prejudice.  The ICC Defendants may re-file an amended summary judgment motion no earlier than 90 days after the Court enters an order appointing Hayes' counsel, and no later than 180 days after such order is entered. This ruling MOOTS Hayes' "Motion in Opposition to Summary Judgment (Dkt. 61) and the ICC Defendants' Motion for Leave to File an Amended Summary Judgment Motion (Dkt. 57).  To clarify, however, the ICC Defendants may assert the res judicata argument asserted in the amended motion in any future motion.

4.      Hayes' Motion to File First Supplemental Civil Rights Action is DENIED.

5.      Hayes' Motion for Joinder to ACLU Case (Dkt. 64) is DENIED although

the Court has ordered limited coordination of discovery efforts between the two cases as

described above.

      6.     Hayes' Motion for Class Certification (Dkt. 65) is DENIED.



DATED:  **September 7, 2011**

Honorable B. Lynn Winmill
Chief U. S. District Judge