UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MICHAEL T. HAYES,<br><br>    Plaintiff,<br><br>vs.<br><br>CORRECTIONS CORPORATION OF AMERICA (CCA), et al.,<br><br>    Defendants. | Case No. 1:09-cv-00122-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is Defendants' Second Amended Motion for Summary Judgment (Dkt. 101) and ICC Defendants' Supplemental Memorandum in Support of Motion for Summary Judgment. (Dkt. 120). The Court has reviewed the written arguments of the parties, as well as the record in this case, and has determined that oral argument is unnecessary. Accordingly, the Court enters the following Order.

## BACKGROUND

Plaintiff is an Idaho Department of Correction inmate who filed a Complaint alleging that certain prison officials failed to protect him from two other inmates who had assaulted him in April 2007 while he was incarcerated at the Idaho Correctional Center (ICC). Many pretrial motions have been filed and ruled upon in this action, including

**MEMORANDUM DECISION AND ORDER - 1**

Defendants' Amended Second Motion for Summary Judgment. (Dkt. 101.) On September 28, 2012, the Court entered a Memorandum Decision and Order (September 28 Order), wherein it dismissed all but three of Plaintiff's claims against the six remaining Defendants for failing to protect him in violation of the Eighth Amendment. (Dkt. 113, p.52.) In addition, the Court denied summary judgment as to Defendants Acosta and Doser (*Id.*); they will proceed to trial on March 11, 2013. (Dkt. 142, p.6.) As to Defendant Valdez, the ICC Warden, and the remaining three Defendants who comprised the Segregation Housing Committee (Committee) at the time Plaintiff requested protective custody – Prado, Delaney, and Chapman – the Court concluded that it was without sufficient factual information to determine whether there were genuine issues of material fact regarding these Defendants' deliberate indifference to a substantial risk of serious harm to Plaintiff.[1] (Dkt. 113, p.37.) Accordingly, the Court denied summary judgment without prejudice as to these four Defendants and ordered them to proceed to trial as well, unless they opted to file supplemental briefing and exhibits (pursuant to Federal Rule of Civil Procedure 56) to reassert their entitlement to summary judgment. (*Id.*) Defendants timely filed their Supplemental Memorandum in Support of Motion for Summary Judgment. (Dkt. 120.) Plaintiff filed his responsive pleadings (Dkt. 143), and Defendants

---

[1] As more fully discussed in the September 28 Order, an inmate must satisfy two requirements set forth in *Farmer v. Brennan*, 511 U.S. 825 (1994), to prevail on an Eighth Amendment failure to protect claim. First, the inmate must show he is incarcerated under conditions posing a substantial risk of serious harm. Second, the inmate must show that prison officials were deliberately indifferent to a substantial risk of serious harm, which is the subjective element of the test. *Id.* at 837. Whether Plaintiff can establish that a genuine factual dispute exists as to whether Defendants Valdez, Prado, Delaney, and Chapman were deliberately indifferent to a substantial risk of serious harm is the sole issue to be decided by this Memorandum Decision and Order.

**MEMORANDUM DECISION AND ORDER - 2**

then filed their Reply Memorandum in Support of Motion for Summary Judgment. (Dkt. 145.)

## STANDARD OF LAW

The Court hereby references and incorporates the applicable legal standards set forth and discussed in the September 28 Order. To briefly recap, summary judgment is appropriate where a party can show that there is no genuine dispute as to any material fact" as to any claim or defense, and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To show that material facts are not in dispute, a party may cite to particular parts of materials in the record, or show that the materials cited do not establish the presence of a genuine dispute, or that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A)&(B); *see T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987) (citation omitted). If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Nor is the Court "required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (quoting *Fosberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)). Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby,*

**MEMORANDUM DECISION AND ORDER - 3**

*Inc.*, 477 U.S. 242, 252 (1986). Statements in a brief, unsupported by the record, cannot be used to create an issue of fact. *Barnes v. Independent Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995).

## DISCUSSION

As set forth in the September 28 Order, the Court requested additional factual information regarding the investigation of and hearing for Plaintiff's request for protective custody, and whether Defendants Prado, Delaney, Chapman and Valdez had any further oversight, notice or review of Plaintiff's subsequent housing assignments, or his verbal and written concern forms of threats of harm. (Dkt. 113, p.38.)

**1. Material Facts**

This section includes facts that are undisputed and material to the resolution of the specific issues identified by the Court in the September 28 Order. Where material facts are in dispute, the Court has included Plaintiff's version of facts, insofar as that version is not contradicted by clear documentary evidence in the record.

On September 29, 2006, Plaintiff was assigned housing on the A-Pod section of ICC. (Dkt. 143-2, p.2.) That same day, Plaintiff alleged that another inmate[2] verbally threatened him because he was a sex offender. (*Id.*) As a result, Plaintiff submitted a written request for protective custody. (Dkt. 101-11, p.4.) Plaintiff was then taken to Defendant Doser's office where he told Doser about the threat (Dkt. 143-2, p.2), and

---

[2]In Plaintiff's written request for protective custody, he initially described the inmate as "a bald man with 2 teardrop tatoos on his face just below one eye." (sic) (Dkt. 101-11, p.4.)

**MEMORANDUM DECISION AND ORDER - 4**

pursuant to IDOC operating procedure, Defendant Doser placed Plaintiff in segregation while Doser investigated the alleged threat of harm against Plaintiff.[3] (Dkt. 101-12, pp.5-6.)

When Defendants Doser and Acosta conducted a follow-up interview with Plaintiff on October 5, 2006, Plaintiff told them that the tattooed bald man who threatened him was named "Pierce."[4] (Dkt. 101-6, p.3; Dkt. 101-7, p.3.) Defendants assert, however, that Plaintiff did not provide any details about the threat, such as any eyewitnesses, the time or location of the threat, or any other corroborating evidence to verify Plaintiff's allegations. (Dkt. 120-6, p.2.) Instead, Plaintiff began telling Defendants Doser and Acosta how he was wrongfully convicted, so the Defendants ended the interview. (*Id.*) Defendant Doser states that he "would have recommended protective custody if [Plaintiff's] allegations was determined to be credible and if an alternative housing assignment would not remove the [Plaintiff's] perceived threat of danger." (*Id.*) Because Defendants did not perceive Plaintiff's threat to be credible, they chose not to interview

---

[3]Plaintiff contends that he also asked Defendant Doser for the A-Pod Unit booking book so Plaintiff could identify the inmate who threatened him, and he also told Defendant Doser that he wanted to file charges against the inmate who threatened him. (Dkt. 143-2, pp.2-3.) According to Plaintiff, Defendant Doser refused to cooperate and would not answer any of Plaintiff's questions about the inmate who had threatened him. (*Id.*) None of these allegations are material to the specific issue being addressed herein as to whether Defendants Prado, Delaney, Chapman and Valdez were deliberately indifferent to Plaintiff's substantial risk of harm.

[4] Plaintiff contends that in this interview, he again asked for the booking mug shots of A-Pod inmates so he could make a positive identification of the inmate who threatened him, and he renewed his request to file charges against the inmate, but Defendants Doser and Acosta denied both requests. (Dkt. 143-2, pp.6-7.) Once again, these allegations are not material or relevant to the specific issue being addressed herein.

**MEMORANDUM DECISION AND ORDER - 5**

inmate Pierce and thereby avoided a risk of violent retaliation towards Plaintiff.[5] (*Id.* at 2-3.)

Nonetheless, after the interview Defendant Doser determined that Plaintiff should be housed away from A-Pod since "there was no way to be certain that a threat to [Plaintiff] did not exist on A-Pod." (*Id.* at 3.) Accordingly, Defendant Doser submitted a report to the Committee and recommended that Plaintiff be housed in K or L Pods, which are general population units where other sex offenders lived "without problems." (*Id.*)

Once the Committee received Defendant Doser's written report, the Committee members reviewed Plaintiff's disciplinary history, housing history, underlying offense, and own testimony. (Dkt. 120-1, pp.2-4; Dkt. 120-3, p.2; Dkt. 120-7, p.2.) The Committee then conducted a hearing on October 11, 2006, and asked Plaintiff about the nature of inmate Pierce's threat and alleged actions. (Dkt 120-1, p.4; Dkt. 120-3, p.3; Dkt. 120-7, p.3.) Plaintiff stated that a bald inmate with two tear drops tattooed on his face had threatened him, but when the Committee asked for more information, Plaintiff did not elaborate on the alleged threat or provide any other support for this allegation. (Dkt. 120-1, pp. 4-5; Dkt. 120-3, pp.3-4.) The Committee asked Plaintiff if he had issues with any other inmates besides Pierce; he said no. (Dkt. 120-1, p.4.) The Committee then asked Plaintiff if he would be able to live in the general population if he was not in the same

---

[5]In his Affidavit, Defendant Doser states that at the time of the interview, the inmate population did not react well if they believed another inmate had made an allegation to prison staff against another inmate. If Defendant Doser had interviewed inmate Pierce, it "would have given inmate Pierce the perception that [Plaintiff] had alleged to staff that inmate Pierce was violating facility rules, which may have caused a violent retaliation towards [Plaintiff]." (Dkt. 120-6, pp. 2-3.)

**MEMORANDUM DECISION AND ORDER - 6**

unit as inmate Pierce; Plaintiff said he was willing and able to live with other inmates. (Dkt. 120-1, pp.4-5.)

When the Committee specifically asked Plaintiff if his status as a sex offender would prevent him from living in the general population with other inmates, Plaintiff stated it would not prevent him from living with other inmates, although he said he could not live in Units ABC or JKL. (Dkt. 120-1, p.5.) When asked why, Plaintiff stated that he had been threatened. (*Id.*) When the Committee followed up on this new allegation, however, Plaintiff acknowledged that no inmate besides Pierce had threatened him, but that "people had mentioned his crime." (*Id.*) Plaintiff did not provide any specific information about these people, nor could he elaborate on these statements. (*Id.*) Defendants on the Committee also recall that a large portion of Plaintiff's testimony revolved around his concern with getting a bottom bunk assignment on a lower tier for medical reasons, rather than obtaining protective custody from inmate Pierce. (Dkt. 120-1, p.5; Dkt. 120-3, pp.3-4; Dkt. 120-7, p.3.)

After the hearing, the Committee considered Plaintiff's allegations, Defendant Doser's investigation, ICC records and Plaintiff's testimony, and decided to recommend Plaintiff be housed on K or L Pod. (Dkt. 120-7, p.4.) With that assignment, there would be minimal contact with inmate Pierce. (Dkt. 120-1, p.6; Dkt. 120-3, p.4.) The Committee also considered Plaintiff's allegation that he could not live on JKL or ABC tiers because he had been threatened, but because of the vagueness of the allegation and Plaintiff's inability to elaborate on the alleged threat, the Committee determined that the alleged

**MEMORANDUM DECISION AND ORDER - 7**

threats "may have never occurred." (Dkt. 120-1, p.5.) In addition, each of the Committee members assert that at the time of the hearing, they had no evidence that would have led them to believe that a sex offender would be at a substantial risk of serious harm in K and L Pods. (Dkt. 120-1, p.6; Dkt. 120-3, p.4; Dkt. 120-7, p.4.) Defendant Chapman states that "there were several other sex offenders who were housed 'safely' in those units at that time." (Dkt. 120-1, p.6.)

Defendant Valdez was not present at the hearing, nor did he personally investigate the basis for the Committee's recommendation; he simply reviewed the Committee's report and recommendation and approved it. (Dkt. 120-2, p.2.) Defendant Valdez had no personal knowledge that would contradict the Committee's recommendation, nor did he have any specific knowledge that sex offenders were being targeted for assault at ICC or that Units ABC or JKL had a reputation for being areas where sex offenders were targeted for assault. (*Id.*)

Following Defendant Valdez's approval of the Committee's recommendation to deny Plaintiff protective custody, Plaintiff was transferred to K-Pod that same day. (Dkt. 101-11, p.23.) Between January and April 2007, Plaintiff filed at least three concern forms (with Defendants Doser and Acosta) regarding threats of physical harm, and of being charged rent because of his status as a sex offender. (Dkt. 7-2, pp. 9-10.) However, Defendants Valdez, Chapman, Delaney and Prado never received or knew of any follow-up concern forms or other communication from Plaintiff regarding these subsequent

**MEMORANDUM DECISION AND ORDER - 8**

alleged threats.[6] (Dkt. 120-1, pp.6-7; Dkt. 120-2, p.3; Dkt. 120-3, p.4; Dkt. 120-7, p.4.) Plaintiff did not directly communicate with any of these Defendants regarding these alleged threats. (Dkt. 120-1, p.7; Dkt. 120-2, p.3; Dkt. 120-3, pp.4-5; Dkt. 120-7, p.4.)

**2. Plaintiff's Protective Custody Hearing**

As set forth above, Defendants have provided the Court with supplemental, material facts regarding Plaintiff's request and hearing for protective custody in September and October 2006. Defendants have done so in an effort to establish that there is no genuine dispute as to the material facts at issue and therefore, as a matter of law, Defendants Valdez, Prado, Delaney and Chapman were not deliberately indifferent to Plaintiff's substantial risk of serious harm. *See Farmer*, 511 U.S. at 837. For the reasons set forth below, the Court agrees.

As part of its protective custody investigation and hearing, the Committee reviewed Defendant Doser's report wherein he recommended Plaintiff be returned to general population and housed in K or L Pods instead of protective custody. Accordingly, Defendants have provided additional facts about Defendant Doser's initial protective custody investigation. When Defendants Doser and Acosta interviewed Plaintiff about the

---

[6] Defendants have submitted an additional concern form they recently discovered that Plaintiff allegedly filed on January 20, 2007, wherein Plaintiff requests to be moved from A-Pod back to K-Pod "where there is no hostility towards me." (Dkt. 120-5.) Defendants argue that this newly discovered evidence establishes that there was no objective or subjective risk of serious harm to Plaintiff on K-Pod since he asked to be moved there and further stated there was no hostility towards him on that Pod. (Dkt. 120, p.10.) Defendants have also testified, however, that "Plaintiff never sent any concern forms to any members of the Committee, including then Warden Valdez." (*Id.*) Defendants are therefore advised that this evidence and argument is not relevant to the specific issue being addressed herein – whether Defendants Valdez, Prado, Delaney and Chapman were deliberately indifferent to a substantial risk of serious harm to Plaintiff. Nevertheless, such evidence may be introduced at trial if Defendants so choose.

**MEMORANDUM DECISION AND ORDER - 9**

alleged threat on October 5, 2006, Plaintiff told them that the bald, tattooed inmate's name was "Pierce," but he did not provide any other details or corroborating evidence to verify his allegations. If Defendants "would have had credible information that inmate Pierce did in fact threaten [Plaintiff], facility protocol would dictate that [Plaintiff] would have been recommended for protective custody and disciplinary action would have been taken against inmate Pierce." (Dkt. 120-6, p.2.) Plaintiff's lack of cooperation and inability to provide details or corroborating evidence resulted in Defendants' not perceiving Plaintiff's allegation to be credible. (*Id.*) Consequently, Defendants did not interview inmate Pierce because that "would have potentially placed [Plaintiff] in danger . . . [of] a violent retaliation [by Pierce] . . . [and] we did not want to assume that risk." (Dkt. 120-6 pp.2-3.) Although Plaintiff's unsupported allegation did not merit protective custody, Defendant Doser nonetheless submitted a report to the Committee recommending Plaintiff be housed on K or L Pods, which would keep Plaintiff separated from inmate Pierce who still resided on A-Pod.

Defendants have also submitted declarations from each of the Committee members in response to the Court's request for more information about what evidence was considered, and what transpired, during Plaintiff's protective custody hearing. (Dkt. 113, p.39.) Once the Committee received and reviewed Defendant Doser's written report, the Committee members also reviewed Plaintiff's disciplinary history, housing history, underlying offense, and his own testimony.

At the hearing conducted on October 11, 2006, Plaintiff was asked again about the

**MEMORANDUM DECISION AND ORDER - 10**

nature of inmate Pierce's threat and alleged actions. Plaintiff provided no additional details about the threat, other than to state that a bald inmate with two tear drops tattooed on his face had threatened him. In addition, Plaintiff denied having any issues with any other inmates, and stated he could live in the general population if he was not in the same unit as inmate Pierce. Defendant Chapman recalls that Plaintiff was specifically asked if his status as a sex offender would prevent him from living in the general population with other inmates; Plaintiff replied that it would not, although he then said he could not live in Units ABC or JKL. When asked why, Plaintiff initially stated that he had been threatened, but then acknowledged that no other threats were made against him, only that "people had mentioned his crime." (Dkt. 120-1, p.5.) Plaintiff provided no further information or details about this vague allegation. Instead, all of the Defendants on the Committee recall that a significant portion of Plaintiff's testimony revolved around his concern with getting a bottom bunk assignment on a lower tier for medical reasons.

     After the hearing, the Committee considered Plaintiff's allegations, Defendant Doser's report and recommendation, ICC records, and Plaintiff's own testimony provided at the hearing. The Committee then decided to recommend Plaintiff be housed on K or L Pod because it would be Plaintiff's "best protection from his alleged problems with inmate Pierce." (Dkt. 120-1, p.6.) Although the Committee also considered Plaintiff's new allegation that he could not live on JKL or ABC tiers because people had "mentioned his crime," the vagueness of the allegation led the Committee members to believe "that the alleged statements may have never occurred." (Dkt. 120-1, p.5.) At the time of the

**MEMORANDUM DECISION AND ORDER - 11**

hearing, none of the Committee members had any specific knowledge that sex offenders were at a higher risk of substantial harm on K or L Pods. Finally, as the warden of ICC, Defendant Valdez did not investigate or participate in Plaintiff's protective custody hearing; he simply reviewed and approved the Committee's recommendation.

Plaintiff's responsive pleadings, including his Statement of Undisputed Facts, do not establish a genuine dispute of any of the material facts at issue.[7] *See* Dkt. 143. Rather, Plaintiff broadly challenges the Supplemental Declarations of Defendants Valdez, Prado, Doser, Delaney and Chapman and argues that they "should all be stricken from the record because they have all lied in their supplemental declarations and committed perjury." (Dkt. 143, p.5.) However, Plaintiff provides no evidence whatsoever to support his allegation of lies and perjury. Statements in a brief, unsupported by the record, cannot be used to create an issue of fact. *See Barnes v. Independent Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995).

Moreover, Plaintiff does not dispute or contest any of the Committee members' factual supplements regarding Plaintiff's protective custody hearing. Instead, Plaintiff summarily asserts that "there was no real investigation of the case facts done for a protective custody hearing." (Dkt. 143-1, p.3.) In other words, Plaintiff complains that

---

[7]Plaintiff's Statement of Undisputed Facts contains several allegations regarding the overall treatment of sex offender inmates at ICC, such as: (1) inmates were not punished for attacking sex offender inmates; (2) sex offender inmates were afraid to leave their cells for fear of being attacked by other inmates; (3) no sex offenders were granted protective custody; (4) prison officials refused to adequately protect sex offenders from inmate assaults; and (5) prison officials failed to provide adequate medical treatment for sex offender inmates who were attacked by other inmates. *See* Dkt. 143-2. None of these allegations are material or applicable to the specific issue of whether Defendants Valdez, Prado, Delaney and Chapman were deliberately indifferent to a substantial risk of serious harm to Plaintiff.

**MEMORANDUM DECISION AND ORDER - 12**

there was no in-depth investigation into inmate Pierce and his past history. However, this complaint fails to establish a genuine issue as to a relevant, material fact regarding the Committee's protective custody hearing. The undisputed facts set forth in the Defendants' supplemental declarations demonstrate that Defendant Doser and the Committee performed an adequate investigation into Plaintiff's allegations of threats of harm. Plaintiff was twice given the opportunity to elaborate about inmate Pierce's threat but did not do so, nor did he provide any additional information about his new allegation that people had "mentioned his crime" (and what exactly was said) on the ABC or JKL tiers. Plaintiff does not dispute that he told the Committee he could live in the general population so long as he was not housed in the same unit as inmate Pierce. Plaintiff does not contest that even though he failed to adequately substantiate his allegations of threats of harm to warrant protective custody, the Committee decided to house Plaintiff on a Pod where he would not have any contact with inmate Pierce.

Based on the undisputed facts, the Court finds that the Committee and Defendant Valdez responded reasonably to Plaintiff's allegations. Notwithstanding the Court's previous ruling that Plaintiff submitted sufficient evidence to satisfy the objective prong of Plaintiff's Eighth Amendment claim for purposes of summary judgment (*see* Dkt. 113, p.32), there are no genuine issues of material fact as to whether Defendants Valdez, Prado, Delaney and Chapman were deliberately indifferent to a substantial risk of serious harm during Plaintiff's protective custody hearing.

**MEMORANDUM DECISION AND ORDER - 13**

**3. Plaintiff's Housing Assignments and Subsequent Threats of Harm**

Pursuant to the September 28 Order, Defendants have also provided supplemental, material facts regarding Defendants Valdez, Prado, Delaney and Chapman's knowledge or review – or lack thereof – of Plaintiff's housing assignments and his subsequent verbal and written allegations of threats of harm between October 2006 and April 2007. In the Defendants' Supplemental Declarations, each Defendant specifically states that he or she did <u>not</u> have any further follow-up, contact, or communication from Plaintiff after the protective custody hearing, nor did he or she receive any documentation thereafter from Plaintiff regarding new allegations of threats or risk of harm.  (Dkt. 120-1, pp.6-7; Dkt. 120-2, p.3; Dkt. 120-3, p.4; Dkt. 120-7, p.4.) Plaintiff does not contest any of these facts. Accordingly, the Court concludes that there are no genuine issues of material fact as to whether Defendants Valdez, Prado, Delaney and Chapman were deliberately indifferent to a substantial risk of serious harm to Plaintiff between October 2006 and April 2007.

## CONCLUSION

Pursuant to the September 28 Order, Defendants and Plaintiff have filed supplemental briefing to enable the Court to determine whether there are materially factual issues in dispute regarding the subjective component of the *Farmer* test – that is, whether Defendants Valdez, Prado, Delaney and Chapman were deliberately indifferent to a substantial risk of serious harm to Plaintiff. After reviewing the supplemental material facts provided by the parties and the record herein, the Court concludes that Plaintiff has not established a genuine dispute as to any material fact. In the absence of

**MEMORANDUM DECISION AND ORDER - 14**

such a dispute, Defendants are entitled to judgment as a matter of law. The Court will therefore grant Defendants' Second Amended Motion for Summary Judgment as to Defendants Valdez, Prado, Delaney and Chapman regarding Plaintiff's failure to protect claims.

## ORDER

**IT IS HEREBY ORDERED** that Defendants' Amended Second Motion for Summary Judgment (Dkt. 101) is **GRANTED in part** as follows: Claims 2, 3, and 7 of the First Amended Complaint (failure to protect claims) as to Defendants Prado, Delaney, Chapman and Valdez are dismissed with prejudice.



DATED: **January 8, 2013**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**MEMORANDUM DECISION AND ORDER - 15**