UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| Michael T. Hayes<br><br>                    Plaintiff,<br><br>        v.<br><br><br>Corrections Corporation of America<br>(CCA), et al.,<br><br>                    Defendant. | Case No.  1:09-cv-00122-BLW<br><br>**MEMORANDUM DECISION AND ORDER RE DEFENDANTS' SECOND AND THIRD MOTIONS IN LIMINE** |

**INTRODUCTION[1]**

Pending before the Court are the ICC Defendants' Second and Third Motions in Limine (Dkts. 185, 188).  These motions were only recently filed (on February 27 and March 1, 2013) so plaintiff has not yet had a chance to respond.  The Court will rule on these motions now, however, given that (1) trial is scheduled to begin on March 11, 2103; (2) most of the Court's rulings are favorable to the plaintiff; and (3) *in limine* rulings are provisional in any event, so the Court is open to reconsidering its rulings.

---

[1] The relevant factual background is contained in the Court's February 26, 2013 ruling on defendants' first round of motions in limine.  That background will not be repeated here.

**MEMORANDUM DECISION AND ORDER - 1**

## ANALYSIS

### 1.     The Destruction of Surveillance Video

Defendants first ask the Court to preclude testimony about a prison surveillance video that captured part of Mr. Hayes' April 2007 assault. *See Defendants' Second Motion in Limine,* Dkt. 185.  On a related issue, defendants ask that the jury be instructed (1) to accept the "fact" that the video was "inadvertently destroyed by a third party", and (2) not to consider the absence of the video for any purpose. *See Id.* at 2.  Defendants base this request, in large part, upon the Court's earlier refusal to issue discovery sanctions against the defendants based on the video's destruction.  Specifically, in a March 3, 2011 order, the Court issued this order:

> The evidence suggests that Archibald turned the day room video over to the Ada County Sheriff's Office for investigation. When charges were not filed, the evidence was destroyed – not by Defendants – but by the Ada County Sheriff's Office. Consequently, the day room video tape is no longer in Defendants' possession, and the Court finds that Defendants cannot be held responsible for intentionally destroying the evidence.

Dkt. 51, at 10-11.

The fact that Court declined to issue discovery sanctions based on what the evidence "suggested" does not mean that at trial, defendants are entitled to a favorable jury instructions about what the facts actually are.  Rather, the defendants are free to introduce evidence about what happened to the video and the jury can draw its own conclusions.

The Court also rejects defendants' argument that testimony "regarding the surveillance video is unnecessary and cumulative."  Broadly, defendants argue that

because nobody disputes what actually happened to Mr. Hayes, any testimony about what the contents of video would be unnecessary and cumulative.  But, on the other hand, it appears that defendants intend to introduce evidence about the video at trial; their exhibit list includes the incident report regarding Mr. Hayes' assault.  *See Defendants' Exhibit List,* Dkt. 27, Exhibit 2000.  Within that report, former ICC investigator Brent Archibald said he reviewed the video and relied on it in drafting his investigation report.  *See* Dkt. 27, at "ICC Hayes 26."  If defendants wish to introduce evidence about the video tape at trial, they are also free to also explain what happened to the video.  The Court will not preclude evidence about the video's destruction.  Nor will it issue defendants' requested jury instructions.

### 2.     Reference to the *Kelly* Lawsuit

Defendants next ask the Court to preclude evidence about the "*Kelly* Lawsuit," or the "ACLU Lawsuit."

The *Kelly* suit began in March 2010, when multiple ICC inmates sued the Corrections Corporation of America, Inc. and various individual defendants.[2]  *See Amended Complaint captioned Riggs v. Valdez,* Case No. 1:09-cv-0010-BLW, Dkt. 16. These inmates were represented by the American Civil Liberties Union.  Their central

_____

[2] More precisely, the *Kelly* suit began in 2009, as an individual lawsuit filed by Marlin Riggs, who is one of plaintiff's proposed trial witnesses in this case.  *See Compl.*, Case No. 1:09-cv-00010, Dkt. 3.  Riggs was later joined by other plaintiffs in a proposed class complaint, but then Riggs' suit was severed from the other inmates' suit.  Plaintiff Joshua Kelly then became the lead plaintiff in the proposed class suit, now captioned *Kelly v. Wengler*. *See Order,* Case No. 1:11-cv-185-EJL, Dkt. 2.  The procedural history of this complicated lawsuit is detailed in Judge Lodge's April 27, 2011 Order in Case No. 1:11-cv-185-EJL.

allegation was that "ICC not only condones prisoner violence, the  entrenched culture of ICC promotes, facilitates, and encourages it."  *Id.* at 1.  According to the inmates, "ICC staff cruelly use prisoner violence as a management tool."  *Id.*  The parties refer to this suit as "the ACLU Lawsuit" or the "*Kelly* Lawsuit," in reference to lead plaintiff Joshua Kelly.

Defendants ask for an order preventing any witness from mentioning the *Kelly* suit or its "accompanying proceedings."  *See* Dkt. 188, at 2; Dkt. 188-1, at 6.  More broadly, defendants also ask to exclude "any testimony regarding the *Kelly* case."  *Dkt.* 188, at 2.

The Court agrees that the filing of the *Kelly* lawsuit and its procedural history are irrelevant.  The fact that a proposed class lawsuit was filed nearly three years after Hayes was attacked does not speak to defendants' knowledge as to whether plaintiff faced a substantial risk of serious harm in 2007.  Thus, during trial, the Court will exclude evidence regarding (1) the filing of the *Kelly* lawsuit, and (2) the procedural history of that suit.

On the other hand, the Court denies defendants' motion to the extent it seeks a blanket order excluding all testimony "regarding the *Kelly* case."  The *Kelly* complaint outlines numerous inmate-on-inmate attacks, some of which could potentially be relevant to this action.  In fact, Hayes' April 2007 assault is detailed in the *Kelly* complaint.  *See Kelly Complaint,* Case No. 1:09-cv-00010-EJL, at 34-36.  Thus, it makes no sense to issue a blanket exclusionary order regarding the facts alleged in *Kelly*.  If those facts are relevant to this case, they will be allowed.

MEMORANDUM DECISION AND ORDER - 4

**3.      Use of the Term "Gladiator School" or "Gladiator Pods."**

Defendants also ask the Court to prevent anyone from using terms such as "gladiator school" or "gladiator pod" to refer to any part of the Idaho Correctional Center.  Defendants say that in the context of the *Kelly* lawsuit, "ACLU counsel coined the 'gladiator school' nickname in reference to the ICC."  *Defendants' Mot. Memo,* Dkt. 188-1, at 2.

The Court has reviewed the *Kelly* complaint, however, and it is not fair to say that the ACLU coined these terms.  Rather, the complaint quotes inmates or ICC staff as using terms like "gladiator school."  For example, the complaint alleges:

a.  In 2006, a sergeant (presumably employed with ICC) told inmate Philip Fenwick, who is one of Hayes' proposed trial witnesses in this case, that L-Pod was a "'Lion's Den' and a 'Gladiator Dorm.'"  *See Apr. 27, 2011 Amended Class Action Complaint,* Dkt. 1, Case No. 11:1-cv-00185-EJL, ¶ 48, at 9.

b.  Also in 2006, inmate James Parmer[3] told an ICC psychiatric technician he had heard ICC was a "'gladiator school' in which sex offenders were often assaulted.  The technician allegedly told Parmer, "Just don't let anyone know you're a sex offender" and "'watch out' for prisoners demanding 'rent.'"  *Id.* ¶ 299, at 50.

Thus, the Court will not preclude use of the "gladiator" terms based on the argument that the terms were invented by counsel.

---

[3] James Parmer was one of Hayes' proposed witnesses but he stipulated not to offer this witness.

Defendants next broadly argue that if inmates or employees testify that they heard anyone besides Doser or Acosta use the term "gladiator school," then it must be hearsay. *See Defendants' Mot. Mem.,* Dkt. 188-1, at 3 ("if inmates or employees heard other inmates or employees (other than Defendants Doser and Acosta) using these terms and testified to those other inmates, this would be considered inadmissible hearsay").  This argument is too imprecise and the Court will deny it for that reason.  Rather, the Court will address hearsay objections regarding the "gladiator" phrases in factual context, as they arise at trial.

Defendants also say that use of these terms would cause the jury to confuse this case with the *Kelly* case.  The Court, however, has ruled that Hayes cannot mention the *Kelly* lawsuit at trial.  Defendants nonetheless speculate that some members of the jury might have independent knowledge of the *Kelly* case and argue that the "gladiator" phrases should be precluded to make sure these types of jurors are not confused. The Court will not issue an exclusionary order based on this sort of speculation.

**4.      Defendants' Requested Jury Instructions**

Finally, defendants have asked for certain jury instructions within their third motion in limine.  *See Defendants' Third Motion in Limine,* Dkt. 188, at 4-5.  They want the Court to instruct the jury that Corrections Corporation of America (CCA) and ICC are not parties to this suit and, further, that the jury "cannot determine the liability of Unit Manager Doser or Case Manager Acosta based on any evidence of actions by CCA, ICC, or any of their other employees."  *See* Dkt. 188 ¶ 3(a).

MEMORANDUM DECISION AND ORDER - 6

The Court will take up these requested instructions when it considers the proposed jury instructions already on file.  Preliminarily, however, defendants should be aware that the Court is not inclined to issue either instruction.

First, it is not necessary to tell the jury who is not being sued.  Doser and Acosta are the only defendants who will appear as defendants in the jury instructions and in the special verdict form.

Second, defendants' proposed instruction that the jury cannot "determine liability" of Doser and Acosta based on actions taken by CCA, ICC, or any of its employees seems contrary to plaintiff's right to use circumstantial evidence to show what Doser and Acosta must have known.  *See Farmer v. Brennan,* 511 U.S. 825, 842 (1994). That circumstantial evidence could feasibly include "actions by CCA, ICC, or any of their other employees."

## ORDER

**IT IS ORDERED THAT:**

1.     Defendants' Second Motion in Limine (Dkt. 185), relating to the surveillance video, is **DENIED**.

2.     Defendants' Third Motion in Limine (Dkt. 188) is **GRANTED in part,** and

**DENIED in part,** as explained above.

DATED: March 5, 2013

B. Lynn Winmill
Chief Judge
United States District Court